IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-MJ-1291 JFR |
| | ) | |
| vs. | ) | |
| | ) | |
| **SHAHEEN SYED**, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>UNITED STATES' MOTION TO DETAIN</u>

The United States moves to have Defendant Shaheen Syed, also known as Maiwand Syed, detained pending trial pursuant to 18 U.S.C. § 3142 on grounds that the defendant presents both a flight risk and a grave danger to the community. For the reasons set forth below, there is no condition or combination of conditions that will reasonably ensure either the safety of the community or the defendant's appearance at trial.

## I.     BACKGROUND

In recent weeks, the City of Albuquerque has been the scene of a series of horrific gun murders. In connection with two of these shootings, on August 9, 2022, the State of New Mexico charged the defendant's father, Muhammad Atif Syed, with two counts of murder. As the ongoing investigation continues to unfold, law enforcement officers also have recently discovered evidence that appears to tie the defendant, Shaheen Syed, to these killings.

### <u>The July 26, 2022, Murder of Aftab Hussein</u>

On July 26, 2022, at 8:02 p.m., officers from the Albuquerque Police Department (APD) were dispatched to 417 Rhode Island Street N.E., following a ShotSpotter activation. ShotSpotter is a program used by APD to track gunfire in the City of Albuquerque. The ShotSpotter

activation indicated that 13 rounds had been fired in the vicinity of that address, followed by an additional ten rounds. When APD officers arrived, they discovered an unresponsive male with multiple gunshot wounds on the sidewalk near a car parked at 420 Rhode Island Street, NE. The man was pronounced dead on the scene. He was later identified as Aftab Hussein.

At the scene, officers recovered several gun casings, which were later determined to be part of 7.62 millimeter cartridges. This type of ammunition is commonly used with rifles or long guns. The location of the casings indicated that the shooter was behind a bush north of where Mr. Hussein's body was found.

_The August 1, 2022, Murder of Muhammad Afzaal Hussain_

On August 1, 2022, at approximately 9:17 p.m., APD dispatch received a 911 call in which the caller reported that multiple gunshots had been fired near the area of Cornell Drive SE and Garfield Avenue SE, in an apparent "drive by" shooting.  ShotSpotter activations also indicated that one round, followed by two volleys of seven rounds, had been fired near 420 Cornell Drive SE.

When APD officers arrived, they discovered another male on the sidewalk, pronounced dead at the scene, with multiple gunshot wounds, in front of 422 Cornell Drive SE. The man was later identified as Muhammad Afzaal Hussain.

At the scene, officers determined that two different guns had been fired in this killing, as they recovered seven 7.62 millimeter casings, and seven 9 millimeter casings. After reviewing the ShotSpotter activation, officers believed that the casing they were unable to locate at the scene was a 9 millimeter casing.

_The August 5, 2022, Murder of Naeem Hussain_

On August 5, 2022, Naeem Hussain attended afternoon funeral services at the Islamic Center of New Mexico in Albuquerque that were held for the two victims that had been gunned

down described above, Aftab Hussein and Muhammad Afzaal Hussain. Later that night, at approximately 11:57 p.m., APD officers found Naeem Hussain dead in his Toyota 4Runner, which was parked outside the building housing Lutheran Family Services on 230 Truman Street NE in Albuquerque. Naeem Hussain had bullet wounds to both his left arm and head.

When officers reviewed video surveillance footage from Lutheran Family Services, they saw Naeem Hussain park his car in the parking lot of the facility at approximately 3:53 p.m., according to the time stamp on the surveillance video.[1] Officers also saw that Naeem Hussain's 4Runner was followed by a light colored sedan. In the video footage, officers also could see what appeared to be gunshots striking the driver's side window of the 4Runner at approximately 4:04 p.m.

Officers also reviewed traffic camera footage that showed Mr. Hussain's 4Runner as he departed the funeral services at the Islamic Center of New Mexico for the other victims at approximately 3:41 p.m. From that footage officers believed that the same light colored, four-door sedan, which appeared to a Volkswagen Jetta, followed Mr. Hussain's 4Runner after the funeral services.

*The APD Flyer Concerning the Volkswagon Jetta*

Following Naeem Hussain's murder, on or about August 7, 2022, APD released a flyer with a picture of the suspect Volkswagen sedan, seeking the public's help in identifying the driver of the car.  The flyer highlighted some damage to the vehicle and the hubcaps of the car. Both APD and the FBI received multiple tips in reference to Muhammad Atif Syed about the shootings and the Volkswagen sedan.  APD was also able to determine that on or about February 18, 2022, they had responded to a call for service at the home of Muhammad Atif Syed, where

---

[1] The accuracy of the time stamps on the surveillance video has not yet been determined, but the time stamps appear to be close to true time.

the defendant also lives, and that a gray Volkswagen Jetta (with the last four vehicle identification numbers 8047) had been present at the property.

The same day that APD released a flyer describing the suspect vehicle that they were looking for, Lubna Syed, who is Muhammad Atif Syed's daughter and the defendant's sister, used WhatsApp to send the defendant a copy of the flyer of the suspect vehicle that APD had released.  An image of her WhatsApp message to her brother is attached hereto as Exhibit 1.

On August 8, 2022, APD received a tip about hubcaps matching those on the picture that law enforcement had released being found in a dumpster near a business in Albuquerque.[2] APD and FBI personnel retrieved the hubcaps and determined that they were Volkswagen hubcaps of the same type shown in the flyer.

On or about August 8, 2022, APD officers located a gray Volkswagen Jetta at the address where Muhammad Atif Syed and the defendant live. The hubcaps on the car appeared to have been removed. At approximately 10:00 p.m. that same day, officers surveilling the residence observed Muhammad Atif Syed depart his home driving the gray Jetta. Law enforcement later stopped him on Interstate 40, approximately 100 miles from Albuquerque, on his way to Texas. At the time he was stopped, the vehicle was bearing a license plate that was not registered to the car.

*The Search of the Volkswagen Jetta and of the Defendant's Home*

Law enforcement officers later searched both the residence where Muhammad Atif Syed and the defendant live, as well as the Volkswagen Jetta that Muhammad Atif Syed was driving.

At the residence officers found two rifles. One rifle, an AK-47 Zastava Arms ZPAM70, 7.62x39 rifle (serial number Z70133061) was found in the bedroom in which Muhammad Atif

---

[2] Google Maps Street View has a photograph of the front of the defendant's home that was taken in January 2022. The photograph shows a gray Volkswagon Jetta, parked in front of the house, that matches the description of the car pictured in the APD flyer and is equipped with the hubcaps.

Syed's identification cards were found. A second AK-47 Zastava Arms ZPAM92, 7.62x39 pistol (serial number Z92-104752) was found in the backroom identified as the defendant's bedroom. A rifle scope was also found in the residence.

With respect to the Volkswagen Jetta, law enforcement found a 9 millimeter handgun, and a 9 millimeter casing between the windshield and hood area of the car. They also found two 7.62 millimeter casings in the car.

### Results from the National Integrated Ballistic Information Network (NIBIN)

NIBIN is a computer ballistic information network run by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) that compares and matches bullet casings to specific firearms. In this case, law enforcement officers live-fired all of the firearms they recovered and submitted those casings, together with the casings found at the murder scenes and the casings found in the Volkswagen Jetta, to NIBIN.

The result of the NIBIN comparison was a presumptive match that the rifle that officers had found in Muhammad Atif Syed's bedroom had fired the casings found both at the scene of Aftab Hussein's murder on July 26, 2022, as well as the casings found at the scene of Muhammad Afzaal Hussain's murder on August 1, 2022. There was also a presumptive match between the 9 millimeter casings found at the scene of Muhammad Afzaal Hussain's murder and both the 9 millimeter handgun found in the Volkswagen Jetta and the 9 millimeter casing found between the windshield and hood of the car.  Agents are awaiting additional testing to determine if there are any other NIBIN matches.

### The Defendant's Interview

Officers interviewed the defendant on August 9, 2022, after searching his residence. During that interview, the defendant initially claimed that he had not been in the Jetta at gun stores recently, which is not true.

*Ties Between the Defendant and His Father to Specific Firearms*

On July 15, 2022, the defendant and his father, Muhammad Atif Syed, went together to BMC Tactical, in Albuquerque, and picked up two firearms that they had purchased.  The defendant picked up a Zastava ZPAPM92 7.62x39 caliber pistol (serial number Z92-10452), and his father picked up a Zastava Arms ZPAPM70 7.62x39 caliber rifle (serial number Z70-133061).  Officers found both of these firearms when a search warrant was recently executed at the defendant's home, and both of these firearms had been partially painted white.  The rifle, which was found in a box under Muhammad Atif Syed's bed, is the same rifle for which the NIBIN comparisons resulted in presumptive matches for the casings recovered at the scenes of the July 26, 2022, murder of Aftab Hussein and the August 1, 2022, murder of Muhammad Afzaal Hussain.

The ATF Form 4473 that is at issue in the instant case confirms that the defendant completed his purchase of a Romarm, model WASR-10, 7.62x39 caliber rifle (serial number 21A1-88389) on June 11, 2021.  On July 22, 2022, Muhammad Atif Syed ordered a mount for this firearm.  At approximately 3:15 p.m. on August 1, 2022,[3] Muhammad Atif Syed and the defendant went to Roof Korean Custom Gunsmithing, also located in Albuquerque, to pick up the side mount, and Muhammad Atif Syed also purchased a scope with 3x optics that he handled in the store.   The defendant took the WASR-10 rifle into the store, where it was installed with the mount and scope.

*The FBI's Analysis of Cell Tower Data on August 5, 2022*

As part of the ongoing investigation, law enforcement officers have analyzed cell tower data in Albuquerque which they have received as part of the investigation into Naeem Hussain's

---

[3] This is approximately six hours before Muhammad Afzaal Hussein was allegedly gunned down by Muhammad Atif Syed.

murder on August 5, 2022.  They also analyzed activity on cell towers for phone numbers connected with the defendant's phone number and his father's phone number.

Data indicates that at approximately 3:39 p.m., the defendant's phone connected with the defendant's father's phone, at which point the defendant's phone was still somewhere in the general area of the Islamic Center of New Mexico on Yale Boulevard SE in Albuquerque.  Data indicates that at approximately 4:06 p.m., the defendant's phone had moved to an area closer to the location of the August 5 murder.

In terms of location, cell tower data for August 5, 2022, also reveals that between approximately 3:53 p.m. and 3:59 p.m., the defendant's father's phone was located along an arc of radio signals between his cell phone and a cell tower that also encompassed the location where Naeem Hussain was murdered.[4]  The data revealed that between 4:04 p.m. and 4:22 p.m., the defendant's father's phone was still in the general area of the murder.

At approximately 4:14 p.m., the defendant's phone connected with the father's phone, at which point both phones were located in the general area of the murder.  Between 4:18 p.m. and 4:20 p.m., the defendant's phone was located along an arc of radio signals between his cell phone and a cell tower that encompassed the location where Naeem Hussain was murdered.

## II.    ARGUMENT

As this Court is aware, in determining whether there are conditions of release that will both "reasonably assure the appearance" of the defendant at trial and "the safety of any other person and the community," this Court must consider several factors. 18 U.S.C. § 3142(g). Those factors include: (1) the nature and circumstances of the offense charged, including whether the offense

---

[4] Cell tower "dumps" do not provide a constant stream of cell phone location data, or possibly any at all. Rather, some partial location data may be gathered if a customer makes a call or sends or receives a text or uses internet data near a cell tower that is relayed from that cell tower.  The cell phone companies do not always record all activity between the cell phone and the network.

involves a firearm, (2) the weight of the evidence against the defendant, (3) the defendant's history and characteristics, including the defendant's length of residence in the community, community ties, past conduct, criminal history and record concerning appearance at court proceedings, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  § 3142(g)(1) – (4).

**A. Defendant Should be Detained Pending Trial Because There Is No Combination of Factors That Can Assure the Safety of the Community or the Defendant's Appearance.**

**1.     Nature and circumstances of the offense.**

As described in the criminal complaint, the defendant is charged with lying on an ATF Firearms Transaction Record (Form 4473) in connection with the purchase of a 7.62X32 rifle on June 9, 2021. The crime with which the defendant is charged is thus one of moral turpitude. "Moral turpitude refers to conduct which is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed between man and man, either one's fellow man or society in general." *Wittgenstein v. INS,* 124 F.3d 1244, 1246 (10th Cir.1997) (internal quotation marks omitted). *See Daibo v. Att'y Gen. of U.S.,* 265 F. App'x 56, 60 (3d Cir. 2008) (holding that a conviction under 924(a)(1)(A) is a crime of moral turpitude).

The defendant's firearms purchase took place at Federal Firearms Licensee (FFL) Omni Arms LLC on Central Avenue in Albuquerque. On the Form 4473, in which the defendant certified that his responses were true, correct and complete, the defendant falsely claimed that his current residence and address was 1817 Ocean Drive, Apt. 225 in Hallandale Beach, Florida.

As explained in the criminal complaint, this offense is serious because 18 U.S.C. § 922(b)(3) places restrictions upon the sale or delivery of any non-FFL residing in a state other than the FFL in which the firearm is being purchased. Thus, accurate information about a purchaser's residence factors into an FFL's determination as to whether they can legally transfer

8

a firearm to that individual. When an individual provides a false residence address, the FFL cannot properly make this determination. Moreover, by lying on the Firearms Transaction Record, the defendant caused the FFL to maintain false information in its records. The nature of the defendant's offense should therefore weigh in favor of detention. *See United States v. Gaston*, No. 2:21-CR-36-JD-JPK, 2021 WL 1170201, at *7 (N.D. Ind. Mar. 26, 2021) ("Regarding the nature and circumstances of the offenses charged, the government alleges that Gaston has, on multiple occasions, made false statements in connection with the acquisition of a firearm. Specifically, the Indictment states that Gaston provided an address where he did not reside on a form used in the purchase of firearms. The rules and regulations concerning the sale of firearms help ensure that such firearms do not end up involved in criminal activity or fall into the hands of those who are prohibited from possessing firearms, which is precisely what the government argues happened here. Since any conduct involving a firearm is inherently concerning in terms of potential dangerousness, this factor weighs in favor of detention.")

### 2.    The weight of the evidence.

The weight of the evidence against the defendant in this case is also strong, establishes each of the elements of the charged offense, and again weighs in favor of defendant's detention pending trial. Here, the United States must simply prove that the defendant "knowingly ma[de] any false statement or representation with respect to the information required … to be kept in the records" of an FFL. 18 U.S.C. § 924(a)(1)(A). By contrast to 18 U.S.C. § 922(a)(6), for example, there is no additional requirement under § 924(a)(1)(A) for the United States to show that the defendant's false statement was material, or that the defendant had an intent to deceive. *See, e.g., United States v. Johnson*, 680 F.3d 1140, 1144-45 (9th Cir. 2012) (citing *United States v. Sullivan*, 459 F.2d 993, 994 (8th Cir. 1972)) (rejecting defendant's argument that element of materiality must be read into § 924(a)(1)(A)); *United States v. Johnson*, 60 F. App'x. 260, 262

(10th Cir. 2003) (unpublished) (rejecting defendant's argument that government must prove intent to deceive in § 924(a)(1)(A) prosecution).

In this case, the United States easily clears the bar of establishing that the defendant knowingly made a false statement on the Form 4473 that he is charged with falsifying.  The United States' evidence includes the fact that, during an interview with law enforcement officers on August 9, 2022, the defendant told the officers that he had lived in Albuquerque since 2016 without qualification.  FBI agents in Florida have also interviewed board members and the office manager for the property in Florida where the defendant claimed to have been living in June 2021 and they confirmed to the FBI that a couple had been living in that unit since May 2021. They also indicated that they had no record of Shaheed Syed, aka Maiwand Syed, ever living in that unit. They further confirmed that the board would have been aware if the unit had been subleased.

### 3. Defendant's history and characteristics, including the defendant's length of residence in the community, community ties, past conduct, criminal history, and record concerning appearance at court proceedings.

In addition to the developing evidence that appears to connect the defendant to his father's activities, there are other disturbing reports that cast light on the defendant's history and characteristics, which also weigh in favor of the defendant's detention pending trial.

_July 21, 2021, shooting at Walmart_

For example, on July 21, 2021, APD officers responded to the Walmart store located on San Mateo Blvd. where shots had been fired. While at the Walmart, officers learned that there were two males at the APD Southeast Substation who appeared to be have been involved in the incident at Walmart. Those two individuals turned out to be Shaheen Syed and his brother, Adil Syed.  A copy of this police report is attached hereto as Exhibit 2.

At the station, the defendant told officers that he and his brother had been driving to the

Walmart when they had an aggravated driving incident with a man driving a black sedan. The defendant told the officers that the incident had occurred before they reached the Walmart store, but he thought that they scared the driver because it looked like they had followed him to the Walmart. The driver of the black sedan then "brake checked" the defendant and his brother at the entrance to the Walmart parking lot. The defendant and his brother then tried to quickly pass when the driver of the sedan stepped out and flashed a firearm. The driver sat back down but the defendant stated that he could see that the driver still had the gun pointed at them and was following them. The defendant then stopped the car and his brother, Adil, stepped out of the passenger side of the car and shot at the black sedan. The defendant told APD that they did not know if Adil had hit anyone in the black sedan, and they instead left and went home so as not to worry their mother. Officers later located the firearm from the defendant's home, where he lived with his brother. Officers also later reviewed security footage of the incident from the Walmart parking lot and determined that the defendant's story was consistent with the video footage they saw.

While it appears that no charges were ultimately brought against the defendant or his brother in this case, it is also true that most upstanding individuals manage to avoid getting themselves involved in road rage incidents that escalate to the level where guns are flashed, and then fired, in a public space. This is especially true where the defendant and his brother apparently chose to stop their car to allow Adil to get out of the car and fire at the sedan.

### *The defendant's outstanding arrest warrant for battery against his minor sister*

On February 27, 2022, APD officers responded to a call about a domestic violence incident that had occurred concerning the defendant hitting both his younger sister (who was a 16-year-old minor at the time) and his father. In the APD report regarding the incident, officers reported that the defendant's father told them that approximately 30 to 45 minutes before the

officers arrived at their home, the defendant had gone and started knocking on the door of his younger sister. The defendant's father then went into the room to stop the defendant from hitting his younger sister when the defendant started hitting his father in the face. The officers noticed blood all over the father's face. They asked the defendant's father whether he wanted to press charges against his son, and he answered in the affirmative, indicating that he wanted justice.

The police report is also notable for the fact that officers described how uncooperative the family members, other than the father, were with the police. When they sought to question the minor sister, who the father said had been struck, for example, the other family members spoke to her in Pashtol. She then told the officers that she did not know what had happened. She also told officers that she did not know where her brother was. The police report also indicated that "[t]his was not the first time [the sister] was injured by her brother to the point where she was in the hospital." A copy of the February 27, 2022, police report is attached hereto as Exhibit 3.

APD officers subsequently filed a criminal complaint and, on March 21, 2022, issued the defendant a summons to appear on a criminal charge of battery on a household member. When the defendant subsequently failed to appear, Judge David Murphy issued a bench warrant on April 4, 2022.  That warrant remains outstanding.

In terms of the defendant's ties to the community, it should also be noted that the defendant's father's explanation to agents as to why he was leaving Albuquerque in the dark of night was because he wanted to find a new place for his family to live, away from the dangers of Albuquerque. His adult daughter reportedly said something similar in a recent news report.  If that explanation from the family is to be believed, then it would obviously complicate the defendant's claim that he should be released based on his strong ties to Albuquerque. The reality is that the defendant has strong connections to a region of the world other than the United States, has a passport, and he speaks another language, which means that he would be on much better

footing than others lacking that background if he was released and decided to flee the United States.

Finally, the defendant has demonstrated himself to be a serial liar. Deception is at the heart of the instant charges. Defendant's lies on the ATF Form are not isolated, however, as revealed by his subsequent lies to the officers. Defendant's propensity for dishonesty should undermine the Court's confidence that he will be forthright with any probation officer tasked with supervising him on any form of pretrial release.

4. **The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.**

The evidence that agents have been able to gather thus far in this rapidly unfolding investigation is obviously alarming with respect to the defendant's short and frequent communications with his father both before and after the murder of Naeem Hussain on August 5, 2022. Again, agents believe that Muhammad Atif Syed was aware that Naeem Hussain had attended the funeral services for the other victims and subsequently began following him to the Lutheran Family Services where Naeem Hussain was gunned down at approximately 4:04 p.m. Telephone calls between Muhammad Atif Syed and the defendant would be consistent with quick surveillance calls, both before and after the shooting. And there appears to be no logical reason for the defendant to have just happened to have been in the vicinity of the murder scene so shortly after Mr. Hussain was murdered.

It is also undeniable that during his interview with officers, the defendant initially sought to distance himself from the Volkswagen Jetta, as well as the gun shop where he accompanied his father during his purchase of a rifle scope on August 1, 2022, the very day of one of the murders. The fact that his sister sent the defendant a picture of the APD flyer picturing that same car also suggests that the defendant knew much more about the situation than the rest of a city that was on edge.

13

### III.     CONCLUSION

For the reasons outlined above, the United States requests that the Court find the defendant

is a danger to the community and a flight risk and order that he be detained pending trial because

no condition or combination of conditions will reasonably assure his appearance at trial.

Respectfully submitted,

ALEXANDER M.M. UBALLEZ
United States Attorney

*Electronically Signed*
KIMBERLY BRAWLEY
FRED FEDERICI
Assistant U.S. Attorneys
P.O. Box 607
Albuquerque, New Mexico 87102
Phone: (505) 346-7274
Fax: (505) 346-7296

I HEREBY CERTIFY that I electronically filed
the foregoing with the Clerk of the Court using
the CM/ECF electronic filing system which will
send notification to all counsel of record.

*Electronically Signed*
KIMBERLY BRAWLEY
Assistant U.S. Attorney

14